O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| LORI K. LEFLER, on behalf of J.D.W., | Case No. EDCV 06-00740-MLG |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | |
| Defendant. | |

**I.   Factual and Procedural Background**

This is an action for judicial review of the Commissioner's final decision denying an application for Supplemental Security Income benefits filed by Lori Lefler on behalf of her eleven-year-old son, J.D.W.[1] Plaintiff applied for benefits on May 15, 2002, alleging that he has been disabled since birth due to chronic fungal sinusitis, migraine headaches, breathing problems, and an inability to retain information. (Administrative Record ("AR") 115.) Plaintiff was diagnosed with

---

[1] Plaintiff was born on May 21, 1995, and will soon be twelve years old.

laryngomalacia (soft, floppy larynx) at a very early age and, when Plaintiff was sixteen months old, he was in a car accident that caused opacification of his right maxillary sinus. (AR 13.) These two conditions are apparently the causes of Plaintiff's medical problems.

The application was denied initially and upon reconsideration. (AR 35-43.) A de novo hearing was held on December 16, 2003, before Administrative Law Judge ("ALJ") Robert K. Rogers, Jr. (AR 10.) In a decision issued on March 25, 2004, ALJ Rogers found that Plaintiff suffers from chronic sinusitis and asthmatic bronchitis, which constitute "severe" impairments, but that Plaintiff does not experience marked or extreme limitations in any of the six domains that are used to determine disability in children.[2] (AR 23-24.) Based on these findings, ALJ Rogers concluded that Plaintiff is not disabled under the Social Security Act. (AR 24.)

Plaintiff sought judicial review of ALJ Rogers' decision in this Court. The parties filed a Stipulation of Remand, and on March 16, 2005, this Court remanded the case for further administrative proceedings. (AR

---

[2] Unlike the five-step process used to determine if an adult is disabled, the procedure for determining childhood disability involves three steps. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. 20 C.F.R. § 416.924(a). If so, then the claimant is not disabled. Id. Second, the Commissioner must determine whether the claimant's physical or mental impairments, viewed separately or in combination, are "severe" as defined by the social security regulations. Id. §§ 416.924(c), 416.924a(a)(4). If not, then the claimant is not disabled. Third, the Commissioner must determine if the claimant's impairments meet, medically equal or functionally equal a listed impairment in the regulations, and if the impairments have lasted or are expected to last for at least 12 months. Id. § 416.924(d). The impairment will be considered functionally equivalent if the claimant has marked limitation in two of the following domains, or extreme limitations in one domain: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. Id. §§ 416.926a(b), (d).

426.) *Lefler v. Barnhart*, Case No. EDCV 04-0953-MLG. The Appeals Council in turn remanded the case to an administrative law judge with instructions to obtain evidence from a medical expert and to obtain additional evidence to clarify the opinions of certain treating medical sources. (AR 424-25.)

A second hearing was held on February 7, 2006, before ALJ Mason D. Harrell, Jr. (AR 412.) Supplemental records were obtained from the treating sources. Dr. Colin Hubbard, M.D., a pediatrician, testified as a medical expert. (AR 412, 415-16.) In his decision denying the application, ALJ Harrell found that J.D.W. suffered from severe impairments caused by asthma, chronic sinusitis, and suspected rhinitis, but that his impairments did not medically or functionally equal a listed impairment and that he therefore is not disabled. (AR 415-22.)

Plaintiff then filed the instant action, claiming that ALJ Harrell erred by: 1) failing to comply with the Appeals Council's remand order; 2) improperly considering the opinions of two treating physicians; and 3) failing to properly consider Plaintiff's mental limitations.

**II. Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc.*

*Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

**III. Medical Opinions of Dr. Crockett and Dr. Ferdman**

Plaintiff claims that ALJ Harrell's consideration of the opinions of Dennis M. Crockett, M.D., and Ronald M. Ferdman, M.D., was erroneous in two respects: 1) ALJ Harrell failed to abide by the Appeals Council's order to obtain evidence that provided the bases for Dr. Crockett and Dr. Ferdman's conclusions; and 2) ALJ Harrell improperly rejected the opinions of Dr. Crockett and Dr. Ferdman. (Jt. Stip. 3-13.)

Plaintiff was treated by multiple physicians, including Dr. Crockett, of Children's Hospital Los Angeles, who performed a number of surgeries on Plaintiff over the course of six years.[3] In mid-2002, Dr. Crockett referred Plaintiff to Dr. Ferdman, also of Children's Hospital Los Angeles, who performed extensive immunological and allergen testing in order to determine the origin of Plaintiff's complaints. (AR 14.) According to ALJ Rogers' evaluation of the results, the testing did not

---

[3] Dr. Crockett performed an ethmoidectomy and antrostomy in March 1996. Following the car accident, Dr. Crockett performed a revision of the right antrostomy on April 14, 1998. On January 15, 2002, Dr. Crockett performed a tonsillectomy, adenoidectomy, and release of ankylogossia. (AR 13-14.) All of these appear to have been outpatient procedures. (AR 538-39.)

reveal any allergic reactions or immunological deficiencies to account for Plaintiff's complaints. (AR 15.) Prior to Plaintiff's initial administrative hearing, Dr. Crockett and Dr. Ferdman prepared letters "To Whom It May Concern" describing Plaintiff's condition.

Dr. Crockett briefly described Plaintiff's symptoms and treatment history, and opined: "His allergies and his sinus disease do create significant impact for his daily living, and he has poor retention in school, possibly secondary to all of this." (AR 287.) The letter closed by encouraging the reader to "do whatever you can to help him." (Id.) ALJ Rogers accorded Dr. Crockett's letter little weight for the following reasons: 1) his statement that Plaintiff's "allergies" negatively impact his daily living is inconsistent with the results of allergy tests administered by Dr. Ferdman; 2) there is no indication that Dr. Crockett's reference to Plaintiff's "poor retention in school" was based on a review of Plaintiff's school records; and 3) from the closing line in which Dr. Crockett encourages the reader to help Plaintiff, it "appears [Dr. Crockett has] taken on the role of advocate for the claimant and his mother, which suggests that his findings were an accommodation in part in an attempt to assist the claimant in his disability claim, rather than for treatment purposes." (AR 15.)

Dr. Ferdman stated in his letter, "These chronic sinus infections have significantly affected his normal activities of daily living including his attendance at school and ability to concentrate and learn at school. It also effects his behavior and it has been fairly consistent that his behavior will get out of control during a flare [up] of his sinus disease." (AR 288.) The ALJ gave little weight to Dr. Ferdman's opinion because: 1) Dr. Feldman's treating records do not reflect a review of Plaintiff's daily activities or school records; and

2) Dr. Ferdman's clinical findings do not support his opinion; specifically, Plaintiff's breathing and spirometry were within normal limits. (AR 14.)

Following this Court's remand order, the Appeals Council remanded the case to an administrative law judge and, in regards to the opinions expressed in the letters from Dr. Crockett and Dr. Ferdman, stated, "Clarification should be obtained from these sources as to the bases for their opinions." (AR 425.)

Children's Hospital Los Angeles submitted fifty-four pages of supplemental records prior to the proceedings on remand. (AR 475-529.) ALJ Harrell explicitly incorporated ALJ Rogers' discussion of the medical evidence into his decision, to the extent that it was not inconsistent with the orders issued by this Court or the Appeals Council, then reviewed the newly submitted material. (AR 415.) ALJ Harrell agreed with ALJ Rogers' conclusion and found that the opinions of Dr. Ferdman and Dr. Crockett are entitled to little weight. (AR 416.) ALJ Harrell gave the following explanation for his conclusion:

> [T]heir opinions are entitled to little weight because they are without rational explanation, unsupported by objective evidence, inconsistent with the medical evidence, including their own treating records, contain assumptions—such as that sinus disease causes behavioral problems—that lack even a common sense basis, and appear to be written solely in an attempt to assist and appease the claimant's mother.

(AR 416.) ALJ Harrell also noted that the supplemental records did not indicate that Dr. Crockett and Dr. Ferdman's opinions were based on Plaintiff's school records. (Id.)

///

### A.  Whether the ALJ Complied with the Appeals Council's Order to Obtain Evidence

Plaintiff focuses on ALJ Harrell's statement that "no evidence has been submitted since Judge Rogers' decision was issued to show that either Dr. Ferdman or Dr. Crockett ever reviewed the claimant's school records," and claims that remand is warranted because ALJ Harrell failed to follow the Appeals Council's order to obtain clarification "from these sources as to the bases for their opinions." (Jt. Stip. 3-4.)

It is true that the regulations direct the ALJ on remand to "take any action that is ordered by the Appeals Council...,"[4] 20 C.F.R. § 416.1477(b), but Plaintiff fails to show that the ALJ failed to follow the Appeals Council's directive. The Appeals Council ordered the ALJ to obtain evidence that would clarify the bases for the opinions of Dr. Crockett and Dr. Ferdman, and the ALJ obtained fifty-four pages of supplemental records. There is no indication that the request for supplemental records was somehow inconsistent with the Appeals Council's

---

[4] Instead of citing the relevant regulation, Plaintiff states, "The Ninth Circuit held that 'evasion of the full effect of the remand order justified further remand for the required analysis...because the ALJ is bound to follow the Appeals Council's order "and may not take any additional action that is not inconsistent with the Appeals Council's remand order."'" (Jt. Stip. 4) (citing *Ruiz v. Apfel*, 24 F. Supp.2d 1045, 1050 (C.D. Cal. 1998)).
This is not the first time the Plaintiff's attorney has inserted this exact passage in a Joint Stipulation filed with this Court. Addressing this quote in a prior case, this Court pointed out four separate errors contained in the passage and admonished Plaintiff's attorney as follows:
> The manner in which Bishop's counsel employed this authority is at best extremely careless and at worst an intentional attempt to mislead the Court. The Court will assume it is the former. But Bishop's counsel is reminded that he is an officer of the Court and that his misrepresentations to this Court could result in sanctions in the future.

*Bishop v. Barnhart*, No. SACV 05-1194-MLG, at 5 n.3. Counsel is specifically informed that his continued use of this incorrect boilerplate language will result in the imposition of sanctions.

order, or that the submitted records somehow fail to comport with the request. The order broadly instructed the ALJ to obtain any clarifying evidence; he was not required to specifically obtain the school records that Plaintiff assumes formed the basis for the opinions.

It is the duty of the ALJ to evaluate the evidence and make appropriate findings, including determining credibility. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Consistent with this duty, the ALJ properly noted that the supplemental records do not indicate that Dr. Crockett and Dr. Ferdman relied upon objective evidence in forming their opinions concerning Plaintiff's school attendance and performance.

**B. Whether the ALJ Properly Considered the Medical Opinions of Dr. Crockett and Dr. Ferdman**

Plaintiff claims that ALJ Harrell summarily rejected the opinions of Dr. Crockett and Dr. Ferdman, as expressed in the letters discussed above, without giving a proper basis for his decision. (Jt. Stip. 7-13.)

It is the responsibility of the ALJ to resolve conflicts and ambiguities in the medical record and determine credibility. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1989). An ALJ should accordingly give deference to a treating medical source's opinion as to the nature and severity of an impairment if it is well supported and not inconsistent with other substantial evidence. SSR 96-2p, 1996 WL 374188, at *1 (S.S.A. July 2, 1996). This is "[b]ecause treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual...." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

If the opinion of a treating physician is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even if it

is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Id.* Nevertheless, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

ALJ Harrell did not err in rejecting those portions of the letters that opine about Plaintiff's performance in school. One of the purposes of the proceeding on remand was to clarify the bases for the physicians' opinions regarding Plaintiff's school performance. Consistent with this directive, ALJ Harrell noted the absence of any evidence to support these portions of the opinions and appropriately rejected them.

Plaintiff is otherwise correct that ALJ Harrell's decision, standing alone, does not provide specific and legitimate reasons for rejecting the opinions of Dr. Crockett and Dr. Ferdman. ALJ Harrell summarily states that the opinions are "without rational explanation, unsupported by objective evidence, inconsistent with the medical evidence, including their own treating records, contain assumptions...that lack even a common sense basis, and appear to be written solely in an attempt to assist and appease the claimant's mother." (AR 416.) It is error for an ALJ to merely recite a list of generic reasons for rejecting the opinion of treating physicians. Moroever, the sweeping invective used by ALJ Harrell in characterizing the opinions is clearly unwarranted by the record.

But ALJ Harrell's decision did not stand alone. He also incorporated the reasoning of ALJ Rogers to the extent that it was consistent with the Appeals Council's order. (AR 415.) The rationale

9

provided by ALJ Rogers was not found to be in error; rather, the Appeals Council ordered further clarification by the medical sources. Upon receiving and reviewing the supplemental evidence supplied by the medical sources, ALJ Harrell legitimately found that the reasons provided by ALJ Rogers were "relevant and accurate." (Id.)

Morever, J.D.W.'s ability to acquire and use information was specifically addressed by Dr. Hubbard at the administrative hearing. He stated that based upon J.D.W.'s most recent report card (AR 168-70.)and psychometric testing, his math reasoning, math facts, reading level and spelling were at or above grade level. (AR 540-41.) To the extent that he was deficient in any area, such deficiency could not be attributed to his sinusitis. (AR 541.)

ALJ Rogers provided clear and convincing reasons for giving little weight to the physicians' opinions. As discussed above, ALJ Rogers discredited Dr. Crockett's opinion because it assumed that Plaintiff suffered from allergies, which was contradicted by later clinical tests conducted by Dr. Ferdman that did not indicate any allergies. ALJ Rogers also discredited Dr. Ferdman's opinion because it was inconsistent with his own clinical findings that Plaintiff's breathing and spirometry were normal. These inconsistencies provide specific and legitimate bases for rejecting the physicians' opinions. *Thomas*, 278 F.3d at 956-57.

In light of the proper bases incorporated from ALJ Rogers' decision, any error committed by ALJ Harrell in evaluating the physicians' reports was harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Even if the opinions contained in the letters were credited, they are not inconsistent with ALJ Harrell's decision. The physicians merely offered general opinions about the impact of Plaintiff's condition, but in no way implied that the condition was

disabling. Dr. Crockett stated that Plaintiff's symptoms "create significant impact for his daily living," and Dr. Ferdman stated that Plaintiff suffers from "nasal congestion, stuffy nose, headaches, [] difficulty breathing through his nose..., shortness of breath and wheezing," which affect "his normal activities of daily living", including his behavior, which "will get out of control during a flare [up] of his sinus disease." (AR 287-88.) ALJ Harrell found that Plaintiff "clearly has occasional shortness of breath, headaches, sinus infections, and bronchitis which interfere with his daily activities, at least to some extent," and exhibits "occasionally disruptive behavior." (AR 422.) Although ALJ Harrell did not rely upon the physicians' opinions as the basis for his decision, he found that Plaintiff's infirmities had the same affect as expressed by the physicians, but not to a degree that warrants a finding of disability.

**IV.  Limitations on Plaintiff's Intellectual Functioning**

On September 5, 2002, Nick Andonov, Ph.D., performed a complete psychological evaluation of Plaintiff. Plaintiff received a full-scale IQ score of 76 on the Wechsler Intelligence Scale for Children-III ("WISC-III"), which indicates that Plaintiff is within borderline range of intelligence. (AR 280, 282.) Plaintiff claims that ALJ Harrell erred by failing to consider whether Plaintiff's IQ score constitutes a severe impairment. (Jt. Stip. 15-16.)

ALJ Harrell did not fail to consider Dr. Andonov's findings. As discussed above, ALJ Harrell incorporated ALJ Rogers' discussion of the medical evidence, which included a summary of Dr. Andonov's report and the WISC-III results. (AR 15-16, 415.) ALJ Harrell necessarily drew upon this evidence in determining the extent of Plaintiff's limitations in

acquiring and learning information, the first domain. (AR 417.) ALJ Harrell noted that "testing initially suggested the claimant was functioning intellectually in the low average range," but that subsequent school records and the testimony of medical expert Colin Hubbard, M.D., reveal that claimant has no limitation in acquiring and using information. (AR 417.)

The ALJ is responsible for resolving conflicts in medical testimony. *Magallanes*, 881 F.2d at 750. ALJ Harrell properly considered the evidence, in this instance by reference to ALJ Rogers' decision, and concluded that, notwithstanding Plaintiff's IQ score, he is not limited in his use of information. Dr. Andonov's findings arguably support the conclusion that Plaintiff is extremely limited in his intellectual functioning, but this Court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

## V. Conclusion

For the reasons stated above, it is **ORDERED** that the decision of the Commissioner be affirmed and this case be dismissed with prejudice.

DATED: May 9, 2007

　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　MARC L. GOLDMAN
　　　　　　　　　　　　United States Magistrate Judge